# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| Daniel Jackson, Individually and as the Personal Representative of the Estate of Zachariah Jackson, and Lynda Jackson | § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | C.A. No. 4:20-cv-00109 |
| American Bureau of Shipping; ABS Group of Companies, Inc.; ABS Quality Evaluations, Inc.; ABS Maritime Services, Inc.; and ABSG Consulting, Inc. | § § § § § § | |
| *Defendants*. | § § | |

---

## PLAINTIFFS' MOTION TO REMAND

---

TABLE OF CONTENTS

TABLE OF CONTENTS ..............................................................................................II

TABLE OF AUTHORITIES .................................................................................... III

NATURE AND STAGE OF THE PROCEEDINGS ............................................... 1

ISSUES REQUIRING RESOLUTION ................................................................... 1

SUMMARY OF THE ARGUMENT ....................................................................... 2

JUDICIAL NOTICE................................................................................................. 3

RELEVANT FACTS ................................................................................................ 3

LEGAL STANDARD ............................................................................................. 10

ARGUMENT........................................................................................................... 10

   1.   ABS has not satisfied its burden to present evidence in favor of federal officer
removal. ............................................................................................................ 10

      a.   ABS was not "acting under" the direction of a federal officer when it failed to
properly inspect the B.255. ........................................................................ 11

      b.   ABS has no colorable federal defense against Plaintiffs' maritime claims. ............ 15

   2.   Plaintiffs' general maritime claims are not removable. ............................... 15

CONCLUSION....................................................................................................... 20

<u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir. 1995) ................................. 11

*Bartel v. Am. Exp. Isbrandtsen*, 64 F. Supp. 3d 856 (M.D. La. 2014), *aff'd sub nom. Bartel v. Alcoa S.S. Co., Inc.*, 805 F.3d 169 (5th Cir. 2015) ............................................. 11

*Breaux v. Gulf Stream Coach, Inc.*, CIV. A. No. 08-893, 2009 WL 152109 (E.D. La. 2009) ................................................................................................................. 12, 13

*Cormier v. Chet Morrison Contractors, LLC*, 85 F. Supp. 3d 880 (S.D. Tex. 2015) ............ 10

*Curry v. Chevron, USA*, 779 F.2d 272 (5th Cir. 1985) .............................................. 4

*Dahiya v. Talmidge Intern., Ltd.*, 371 F.3d 207 (5th Cir. 2004) ............................... 2

*De Aguilar v. Boeing Co.*, 47 F.3d 1404 (5th Cir. 1995) ........................................... 10

*Gregoire v. Enterprise Marine Services, LLC*, 38 F. Supp. 3d 749 (E.D. La. 2014) ............. 16

*In re Cooper/T. Smith*, 929 F.2d 1073 (5th Cir. 1991) ............................................ 14

*Langlois v. Kirby Inland Marine, LP*, 139 F. Supp. 3d 804 (M.D. La. 2015) .................. 19, 20

*Legendre v. Huntington Ingalls, Inc.*, 885 F.3d 398 (5th Cir. 2018) ........................... 14

*Mesa v. California*, 489 U.S. 121 (1989) .............................................................. 11

*Mims v. Deepwater Corrosion Services, Inc.*, 90 F. Supp. 3d 679 (S.D. Tex. 2015) ............. 16

*Morgan v. Medtronic, Inc.*, 172 F. Supp. 3d 959 (S.D. Tex. 2016) ............................. 3

*Pelagidis v. Future Care, Inc.*, CV H-17-3798, 2018 WL 2221838 (S.D. Tex. May 15, 2018) (Rosenthal, J.) .................................................................................... 17, 19

*Poirrier v. Nicklos Drilling Co.*, 648 F.2d 1063 (5th Cir. 1981) ................................. 2

*Reino de Espana v. Am. Bureau of Shipping*, 729 F. Supp. 2d 635 (S.D.N.Y. 2010), *aff'd on other grounds sub nom. Reino de Espana v. Am. Bureau of Shipping, Inc.*, 691 F.3d 461 (2d Cir. 2012) ..................................................................................... 6

*Russell v. Baxter Healthcare Corp.*, CIV.A.01-2296, 2002 WL 975679 (E.D. La. May 10, 2002) ................................................................................................... 11

*Ryan v. Hercules Offshore, Inc.* 945 F. Supp.2d 772 (S.D. Tex. 2013) (Miller J.) ............... 16

*Sanders v. Cambrian Consultants Am., Inc.*, 132 F. Supp. 3d 853 (S.D. Tex. 2015) (Miller J.) ................................................................................................................ 18, 19

*Takacs v. Am. Eurocopter, L.L.C.*, 656 F. Supp. 2d 640 (W.D. Tex. 2009) ......................... 11

*Targa Midstream Services LLC v. Crosstex Processing Services LLC*, CV H-14-2256, 2014 WL 12672258 (S.D. Tex. Nov. 25, 2014) .................................................................. 10

*Watson v. Philip Morris, Inc.*, 551 U.S. 142 (2007) ............................................................. 12

*Zeringue v. Crane Co.*, 846 F.3d 785 (5th Cir. 2017) ........................................................... 15

S<small>TATUTES</small>

28 U.S.C. § 1331 .................................................................................................................... 16

28 U.S.C. § 1333 .................................................................................................................... 16

28 U.S.C. § 1441 .................................................................................................................... 17

28 U.S.C. § 1441(a) ............................................................................................................... 16

## NATURE AND STAGE OF THE PROCEEDINGS

This is a general maritime case brought by Daniel and Lynda Jackson individually and Daniel Jackson representing the estate of Zachariah Jackson, Danny's son and a deceased American seamen against an independent vessel classification agency, the American Bureau of Shipping (ABS). ABS improperly removed this case, and Plaintiffs now move to remand.

## ISSUES REQUIRING RESOLUTION

1. Federal officer removal is only proper when the removing defendant fulfills its burden to prove it was acting under the direction of a federal officer. Even detailed instructions from a federal officer are not sufficient, when as here, the defendant retains control over the method of carrying out the directions. ABS creates and enforces its own rules and regulations. Even when ABS performs work delegated by the USCG, it performs that work under its own unique rules and procedures. *Was ABS "acting under" a federal officer?*

2. Absent an independent basis for jurisdiction, general maritime cases are exempt from removal by the Savings to Suitors Clause. Plaintiffs brought general maritime claims against ABS. ABS removed Plaintiffs' claims. *Was the removal of Plaintiffs' general maritime claims proper?*

Remand orders are not reviewable or appealable absent a certification "by the district court according to the provisions of 28 U.S.C. § 1292(b)." *Poirrier v. Nicklos*

1

*Drilling Co.*, 648 F.2d 1063, 1064-65 (5th Cir. 1981); *see also Dahiya v. Talmidge Intern., Ltd.*, 371 F.3d 207, 209 (5th Cir. 2004).

<u>S</u>UMMARY OF THE <u>A</u>RGUMENT

ABS is an independent vessel inspection and classification agency. ABS creates its own rules, policies, and regulations independent from the USCG and the US Government. ABS inspects vessels pursuant to ABS's own unique rules. Even when ABS performs the limited duties delegated to it by the USCG, ABS performs those inspections not to USCG specifications, but instead to ABS's own specifications. Plaintiffs sued ABS for failure to comply with its own rules when inspecting the B.255 barge and for violating its duty under the general maritime law to report dangerous conditions.

ABS also performs inspections under certain standards (MARPOL or SOLAS). But here, the USCG was performing the MARPOL inspections on the B.255, and ABS was performing its own unique "classification" inspections based on criteria solely developed by ABS. ABS performed these inspections at Bouchard's request and not based on any USCG requirement. These inspections were completely voluntary. The USCG was not involved.

The Court should remand this case for the following reasons:

First, the federal officer removal statute requires ABS to be "acting under" specific direction of a federal officer. Plaintiffs' claims arise out of ABS's violations of its own unique rules—not for any work done on behalf of the USCG. Even if Plaintiffs' claims could be construed as violations of the authority generally delegated to ABS by the USCG, numerous courts have held that a general delegation (and even a detailed

2

delegation with numerous specific instructions) is not enough to support federal officer removal when the defendant retains the ability to create its own rules and perform inspections in its own way. This is precisely the case with ABS. Thus, there is no basis for federal officer removal.

And second, general maritime claims brought in the seaman's (or in this case his survivors') chosen venue under the Savings to Suitors Clause are not removable absent another independent ground for removal. Given that Defendants' federal officer removal is improper, Plaintiffs' general maritime claims are not removable and must be remanded.

### JUDICIAL NOTICE

Plaintiffs ask the Court to take judicial notice of documents that relate to this motion. The "court may take judicial notice at any stage of the proceeding." FED.R.CIV.P. 201(d). "The court may take judicial notice of matters of public record. . . ." *Morgan v. Medtronic, Inc.*, 172 F. Supp. 3d 959, 963 (S.D. Tex. 2016). Plaintiffs request that the Court take judicial notice of the following documents:

- Factual portions of the NTSB Report (Exhibit 3) and publicly available: https://www.ntsb.gov/investigations/AccidentReports/Reports/MAB1907.pdf
- ABS Rules for Classification (Exhibit 2) and publicly available: https://ww2.eagle.org/content/dam/eagle/rules-and-guides/current/generic/generics/part-1-ships-may19.pdf

### RELEVANT FACTS

#### *The Underlying Incident*

On October 20, 2017, Bouchard's B.255 exploded just off the coast of Corpus Christi. <u>Ex. 1: Original Pet.</u> Decedent Zachariah Jackson was killed in the fire and

explosion. The B.255 was pushed by the Buster Bouchard, a tug also owned and operated by Bouchard[1]:



The B.255 was built in 1979 and was the oldest barge in Bouchard's fleet. The explosion happened in the port forepeak (an empty void space below the deck) near the front of the B.255 as illustrated below:



---

[1] The photographs and diagrams referenced in this motion come from the publicly available NTSB report. Ex. 3; *see also Curry v. Chevron, USA*, 779 F.2d 272, 274 (5th Cir. 1985) (citing *American Airlines, Inc. v. United States*, 418 F.2d 180, 196 (5th Cir. 1969) (explaining factual portions of NTSB reports are admissible)).



The explosion was caused by cargo vapors leaking into the forepeak void space. The vapors leaked through large cracks in the bulkhead between the No. 1 Port Tank and the forepeak. The cracks were caused by extensive corrosion:

 



The corrosion was not identified by ABS despite numerous inspections where ABS certified that the B.255 met ABS's rules for class certification.

### *ABS and the USCG*

ABS is a vessel classification organization. "ABS establishes rules for the design, construction and periodic survey of numerous types of marine structures . . . [and] performs classification surveys . . . on a five-year cycle . . . to determine whether the ship remains in satisfactory condition." *Reino de Espana v. Am. Bureau of Shipping*, 729 F. Supp. 2d 635, 637 (S.D.N.Y. 2010), *aff'd on other grounds sub nom. Reino de Espana v. Am. Bureau of Shipping, Inc*., 691 F.3d 461 (2d Cir. 2012).

ABS class certification is completely voluntary and does not replace mandatory USCG inspections. Put differently, when ABS certified the B.255 for class, ABS was not

acting on behalf of the USCG. In fact, Bouchard was undergoing separate inspections by both ABS and the USCG:



        In some instances, ABS certifies vessels under internationally required certificates (SOLAS, MARPOL, or the Load Line Convention).[2] But here, the B.255 was still receiving its MARPOL inspections from the USCG, not ABS. *See* Ex. 4: USCG MARPOL Inspection; Ex. 5: Example ABS Inspection. ABS was not stepping into the shoes of the USCG for these inspections. Instead, ABS was inspecting to ensure compliance with ABS's unique rules—not USCG regulations.[3] *See id.* Put differently, the ABS inspections were completely voluntary on Bouchard's behalf, were conducted at

---

[2] "Maintaining Statutory Requirements" *Benefits of Classification*: *Value Added Benefits of ABS Classification* ABS webpage, accessed at https://ww2.eagle.org/en/Products-and-Services/classification-services/benefits-of-abs-classification.html on Jan. 21, 2020, by Roland Christensen.

[3] Even if ABS was performing inspections generally under SOLAS, MARPOL, or the Load Line Convention, it would still not implicate the federal officer removal statute. This point is addressed in more detail in Argument Section 2, *supra*.

Bouchard's request (not the USCG's), and had nothing to do with the B.255 receiving permission to sail by the USCG.

Even when ABS performs an inspection on behalf of a government agency, the inspection is performed under ABS's rules—not under the direction of the government. *See* <u>Ex. 2: ABS Rules, at 21</u> ("All work performed on behalf of governments **shall be governed by the terms and conditions of these Rules** unless the government specifies otherwise.") (emphasis added). ABS provides no evidence that its inspections of the B.255 were performed under specific direction by the USCG.

Plaintiffs' claims arise from ABS's violations of its own unique standards, rules, and guidelines. ABS has over 200 unique rules, guides, and guidance notes.[4] "The Rules, Guides, and standards are, in general, developed by the International Association Classification Societies and by ABS staff." *See* <u>Ex. 2: ABS Rules, at 5</u>. Classification by ABS is not a representation by ABS that the vessel is in compliance with USCG regulations. Instead, "[c]lassification is a representation by ABS as to the compliance with applicable requirements of the Rules, Guides, and standards." *Id.* at 6. The "Rules, Guides, and standards" are created and promulgated by ABS.

When ABS issues a classification report, ABS provides a disclaimer: "the survey reported herein was carried out in compliance with one or more of the Rules, guides, standards or other criteria **of the American Bureau of Shipping and is issued solely for**

---

[4]     *Benefits of Classification*: *Value Added Benefits of ABS Classification* ABS webpage, accessed at https://ww2.eagle.org/en/Products-and-Services/classification-services/benefits-of-abs-classification.html on Jan. 21, 2020, by Roland Christensen.

**the use of the Bureau**, its committees, its clients or other authorized entities" and that the "**Report is a representation only** that the vessel, . . . **has met one or more of the Rules, guides, standards or other criteria of American Bureau of Shipping**." Ex. 5: ABS Survey (emphasis added).

Additionally, when ABS "approves" a vessel for class, it means nothing more than the vessel has been inspected based on ABS's own rules—not any other regulation or standard. *See* Ex. 2: ABS Rules, at 7; *see also* Ex. 5: ABS Survey (ABS shall remain the "sole judge" of the "validity, applicability, and interpretation" of its inspection reports).

ABS's disclaimers that its inspections are based on its own rules and that ABS is the "sole judge" of compliance are not the disclaimers of an entity acting under specific direction or on behalf of a federal officer.

Instead, ABS maintains the right to create, implement, and enforce its own rules and carries out its classification services in compliance with its own rules—even when ABS performs an inspection on behalf of the government. ABS does not qualify for federal officer removal.

### *ABS and Bouchard*

Bouchard voluntarily contracts with ABS for class certification services. If a vessel does not meet the unique ABS certification rules, ABS can withhold classification or require appropriate remedial steps to cure safety hazards.

One of the main benefits of ABS class certification is better insurance premiums. ABS releases "certain information to the vessel's hull underwriters and P&I clubs for underwriting purposes." Ex. 2: ABS Rules, at 6.

9

ABS classified the B.255 under its own rules. But ABS, in violation of its own rules, failed to perform adequate inspections of the B.255, allowing it to maintain classification when the vessel was no longer safe to operate. These failures led directly to the explosion.

## LEGAL STANDARD

"The plaintiff in a removed action may challenge the assertion of federal jurisdiction through a motion to remand." *Cormier v. Chet Morrison Contractors, LLC*, 85 F. Supp. 3d 880, 882 (S.D. Tex. 2015). Importantly, "[t]he ***removing party*** bears the burden of showing that federal jurisdiction exists and that removal was proper." *Targa Midstream Services LLC v. Crosstex Processing Services LLC*, CV H-14-2256, 2014 WL 12672258, at *2 (S.D. Tex. Nov. 25, 2014) (internal citations and quotations omitted) (emphasis added). On a motion to remand, the defendant must prove that federal jurisdiction exists. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995). Generally, "[f]ederal removal jurisdiction is to be narrowly construed, with all ambiguities resolved against the existence of jurisdiction and in favor of remand." *Cormier*, 85 F. Supp. 3d at 882.

## ARGUMENT

### 1.  ABS has not satisfied its burden to present evidence in favor of federal officer removal.

ABS has failed to establish that federal officer removal is proper.  Removal under section 1442(a)(1) requires the removing party to show that: "(1) it acted under the direction of a federal officer, (2) it plans to assert a 'colorable federal defense' to [the]

10

plaintiffs' claims, and (3) there is a causal link between plaintiffs' claims and acts defendant performed under the color of federal law." *Russell v. Baxter Healthcare Corp.*, 2002 WL 975679, at *2, 7 (E.D. La. May 10, 2002) (citing *Mesa v. California*, 489 U.S. 121 (1989)). The purpose of removal under section 1442 "is to protect federal officers from state interference with the exercise of federal authority." *Id.* The removing party, in this case ABS, "bears the burden of establishing the facts necessary to show that federal jurisdiction exists." *Bartel v. Am. Exp. Isbrandtsen*, 64 F. Supp. 3d 856, 862 (M.D. La. 2014), *aff'd sub nom. Bartel v. Alcoa S.S. Co., Inc.*, 805 F.3d 169 (5th Cir. 2015) (citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)).

The policy behind federal officer removal is to protect individuals who are truly acting at the direction and on behalf of a federal officer "because it is premised on the protection of *federal* activity and an anachronistic mistrust of state courts' ability to protect and enforce *federal* interests and immunities from suit, private actors seeking to benefit from its provisions bear a special burden of establishing the official nature of their activities." *Takacs v. Am. Eurocopter, L.L.C.*, 656 F. Supp. 2d 640, 643-44 (W.D. Tex. 2009) (emphasis as in original) (internal citations and quotations omitted). ABS's conduct in this case does not fall under this policy.

### a. ABS was not "acting under" the direction of a federal officer when it failed to properly inspect the B.255.

ABS has not provided any evidence that Plaintiffs' allegations against ABS are the result of, or were causally related to, directions ABS was "acting under" from a federal officer.

Explaining the "acting under" element of federal officer removal, the United States Supreme Court in *Watson v. Philip Morris, Inc.*, 551 U.S. 142 (2007) "found that . . . the private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior" in order to establish the "acting under" element of section 1442. *Takacs*, 656 F. Supp. 2d at 645 (quoting *Watson*, 551 U.S. at 152) (internal quotations omitted) (emphasis as in original). But "the help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law." *Watson*, 551 U.S. at 152 (emphasis as in original). Thus, even a "highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone." *Id.* at 153. "And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id.*

The key analysis from *Watson* hinges on whether ABS was operating under "detailed direction at the behest of a federal officer" such that the USCG's involvement with ABS classification was "so invasive that [ABS] can be characterized as essentially [in] the position of an employee of the government." *Russell*, 2002 WL 975679, at *8 (internal quotations omitted). Importantly, "[c]ourts frequently look at the 'federal direction' and 'causal nexus' prongs . . . together as they are so closely-related." *Breaux v. Gulf Stream Coach, Inc.*, 2009 WL 152109, at *2 (E.D. La. 2009).

Here, ABS must show that Plaintiffs' allegations are causally linked to ABS's actions under the direction of a federal officer. ABS cannot do so.

ABS references several statutory provisions outlining its relationship with the USCG. But, ABS ignores that under the provisions of the delegation and the

memorandum of understanding, ABS retains the ability to set its own rules, policies, and procedures for inspections of vessels like the B.255. Ex. E to Defs.' Notice of Removal, at 1 ("Nothing in this MOU alters in any way . . . the rules, services and responsibilities of the ABS related to vessel classification."). ABS also ignores the fact that Plaintiffs do not assert claims against the United States or against ABS acting in a federal capacity.

*Breaux v. Gulf Stream Coach, Inc.*, 2009 WL 152109 (E.D. La. 2009) provides significant guidance on ABS's federal-officer-removal arguments. In *Breaux*, Shaw Environmental entered into a contract with the government in order to help FEMA carry out federally mandated trailer inspections. The case arose out of an incident where a FEMA trailer exploded and killed the occupant. The plaintiff sued Shaw Environmental in state court alleging claims for products liability. Shaw Environmental, who had inspected the trailer under government direction and in compliance with applicable law, removed the case arguing that it was acting under the direction of a federal officer when performing its inspection duties. The contract between the government and the inspector was highly detailed and established control by FEMA over the inspector. But the contract did not provide FEMA with control over the implementation of the inspections. Instead, the contract left several activities at the discretion of the inspector including repairs, inspection, and the drafting of plans, etc. Although the inspector was contractually required to provide certain reports to FEMA—which indicating ongoing supervision— the overall contract showed that the inspector was primarily responsible for its day-to-day duties. In other words, the "acting under" element was not satisfied where the company

followed basic contractual parameters but controlled the implementation of the contractual obligations.

Just like Shaw Environmental in the *Breaux* case, ABS was delegated limited authority to perform certain inspections for the USCG. But ABS retains the ability to develop and implement its own rules. In fact, by ABS's own admission in its removal papers: "[ABS] was only required to provide the United States Coast Guard with access to the information from its inspections." (Doc. #1, at 10). Exactly like *Breaux*, ABS was free to implement and make its own rules above and beyond those required by the USCG, and as explained above, ABS did precisely that. *See Legendre v. Huntington Ingalls, Inc.*, 885 F.3d 398, 402 (5th Cir. 2018) (stating that "§ 1442 does *not* support removal where defendant government contractors 'were free to adopt the safety measures the plaintiffs now allege would have prevented their injuries.'").

Plaintiffs' claims against ABS arise from ABS's violations of its own unique rules as well ABS's reasonable duty of care under general maritime law. If ABS had prudently followed its own rules, Plaintiffs' injuries would have been prevented. Put differently, ABS's failures arose out of its general maritime duty of care rather than its actions under a federal officer. *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991) (outlining general maritime negligence elements). Thus, there is no causal connection between ABS's failures here and its delegated authority or contractual obligations from the USCG.

**b. ABS has no colorable federal defense against Plaintiffs' maritime claims.**

Remand is also appropriate because ABS cannot put forth a colorable federal defense. Indeed, ABS argues in conclusory fashion that resolution of Plaintiffs' claims "will necessarily involve a determination of Defendants ABS' obligations under the various mentioned federal statutes, federal delegations, and authorization agreements." (Doc. #1, at 10-11). This is incorrect even from a plain reading of the type of authority delegated to ABS and Plaintiffs' claims.

Plaintiffs makes no allegations that ABS violated any statutory provision or that Plaintiffs' claims rest on a determination of federal law. Instead, Plaintiffs allege that ABS failed to properly inspect the B.255 based on the very guidelines that ABS (not the Coast Guard) developed, and failed to take the prudent step to report unsafe conditions. These claims are irrelevant to any agreement between ABS and the USCG.

ABS's conclusory statement that it has a colorable federal defense is nothing more than an attempt to establish jurisdiction that does not exist. *See Zeringue v. Crane Co.*, 846 F.3d 785, 790 (5th Cir. 2017). In fact, Plaintiffs cannot find a single case where ABS has ever used such a defense to justify removal, much less successfully remained in federal court based on it. Plaintiffs' motion to remand should be granted.

**2. Plaintiffs' general maritime claims are not removable.**

As shown above, ABS cannot establish the requisite elements for federal officer removal. Absent is independent ground for federal jurisdiction, ABS cannot remove Plaintiffs' general maritime claims. Thus, ABS's removal of this case was improper.

Federal courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treatises of the United States." 28 U.S.C. § 1331. Section 1441(a) allows removal of those civil actions. *See* 28 U.S.C. § 1441(a). But although section 1333 grants *original* jurisdiction over maritime claims, the law is clear that general maritime claims are not removable under the Savings to Suitors Clause absent independent grounds for jurisdiction. *See Mims v. Deepwater Corrosion Services, Inc.*, 90 F. Supp. 3d 679, 689 (S.D. Tex. 2015) ("While federal courts have original jurisdiction over maritime and admiralty claims, such claims do not present a federal question because they do not arise under the Constitution or laws of the United States."). In fact, "the Supreme Court has made clear that grant of federal admiralty jurisdiction was not intended to be entirely exclusive." *Gregoire v. Enterprise Marine Services, LLC*, 38 F. Supp. 3d 749, 755 (E.D. La. 2014) (citations omitted).

To clarify, "[m]aritime claims initiated in state court are, by definition, brought at common law under the saving to suitors clause as an 'exception' to the original jurisdiction of the federal courts." *Id.* at 764. In other words, maritime claims "filed in state court under the Savings to Suitors Clause" are "transformed into [cases] at law, as opposed to admiralty." *Belanger*, 2019 WL 5595452, at *1. Thus, absent another basis for removal, general maritime claims filed in state court cannot be removed. *Mims*, 90 F. Supp. 3d at 686.

In its removal notice, ABS cites *Ryan v. Hercules Offshore, Inc.* 945 F. Supp.2d 772 (S.D. Tex. 2013) (Miller J.) to argue that the 2011 amendment to section 1441 negates the implications of the savings to suitors clause and renders Plaintiffs' general

maritime claims removable. This is a misreading of *Ryan*, especially as to the facts of this case. Moreover, as this Court is well aware, the analysis does not end with *Ryan*. Instead, as discussed further below, *Ryan* marked the beginning of a series of cases clarifying removal of general maritime claims under the amended section 1441 which left in place the previous restrictions – cases left largely unmentioned by ABS's removal papers. Courts have long recognized that removability of general maritime claims "is a question that has been beset by confusion and uncertainty over the years." *Pelagidis v. Future Care, Inc.*, CV H-17-3798, 2018 WL 2221838 at *8 (S.D. Tex. May 15, 2018) (Rosenthal, J.) (internal citations and quotations omitted). But starting with *Ryan*, and cases that followed, this Court and several others have shed additional light on this question, especially as it relates to section 1441.

In *Ryan*, the estate of a crewman who died during the construction of an offshore well brought admiralty, Death on the High Seas Act, and *Sieracky* claims against the offshore drilling firm. Following removal by the firm under 28 U.S.C. § 1441, the estate filed a motion to remand arguing in part that its general maritime claims were historically not removable and nothing in the amended statute changed that fact. The Court—faced with general maritime, DOHSA, and *Sieracki* claims—disagreed and kept the case.

But later cases from this Court and others, more factually analogous to the instant case and faced with more sophisticated arguments from the plaintiffs, clarified that general maritime claims are not removable unless there an independent basis for federal jurisdiction. ABS's argument on this point ignores cases that have followed *Ryan* (even this Court's own orders), that solidify Plaintiffs' contention regarding jurisdiction here.

17

One in particular, *Sanders v. Cambrian Consultants Am., Inc.*, 132 F. Supp. 3d 853 (S.D. Tex. 2015) (Miller J.), sheds additional light on removability of general maritime claims. In *Sanders*, the court was asked to reconsider *Ryan* in light of additional case law and more thorough argument regarding general maritime claims. Recognizing that *Ryan* was decided correctly on the facts and arguments, but willing to consider new arguments relevant to the amended section 1441, this Court took a second look at the issue of removability of general maritime claims. *Id.* at 857-58.

In *Sanders*, the plaintiff brought Jones Act and general maritime claims associated with her allegations that she was sexually assaulted by the captain of the M/V GECO TAU. At the time, the plaintiff was working as a marine mammal observer aboard the vessel. The defendants removed the case, arguing that the plaintiff had fraudulently pleaded her Jones Act claims and that her general maritime claims were removable.

The Court agreed with the defendants that the plaintiff fraudulently pleaded her Jones Act claims. Thus, the issue left for the Court to decide was whether the plaintiff's general maritime claims alone were removable. At that, point—when the court determined that the plaintiff was not a Jones Act Seaman—the case became analogous to the current case because only general maritime claims were at issue. The defendants argued that despite the differences in the plaintiff's claims versus those brought in *Ryan*, that the *Ryan* opinion established that removal of the plaintiff's general maritime claims was proper. But unlike in *Ryan*, the plaintiff in *Sanders* raised "a sophisticated argument that was not raised in the *Ryan* case." *Id.* at 858. Considering the question of maritime removability under facts more analogous to this case, the Court, citing *Gregoire*, found

18

the Eastern District of Louisiana's historical analysis there convincing and noted that the opinion provided a persuasive argument as to "why the amendments to the removal statute do not impact the historical bar on removal of maritime claims filed at law in state court." *Id.* This Court agreed with *Gregoire*, explaining that "when a maritime claim is filed in state court under the Savings to Suitors Clause, it is transformed into a case *at law*, as opposed to admiralty" and thus removal is barred absent other jurisdictional grounds. *Id.* (quoting *Gregoire*, 38 F. Supp. 3d at 759-62) (emphasis as in original). Accordingly, the Court in *Sanders* denied the defendants' arguments that the plaintiff's general maritime claims were removable and remanded the case.

Tellingly, ABS does not cite *Sanders* in their removal papers. Nor does it acknowledge that since *Sanders*, many courts have accepted the *Sanders* interpretation of the amended section 1441 and held in situations like the one at issue here that "general maritime claims are not removable, despite the changes to 28 U.S.C. § 1441." *Langlois v. Kirby Inland Marine, LP*, 139 F. Supp. 3d 804, 814-15 (M.D. La. 2015) (collecting cases where courts have remanded general maritime claims since the 2011 amendment to § 1441 and the *Ryan* decision, many of those analogous to the Plaintiffs' case here in that there was no claim under the Jones Act.). In a recent case in Judge Rosenthal's court, the Court further explained that although some courts had followed *Ryan* strictly in the past, more recent cases have accepted the *Sanders* arguments and adopted the reasoning there. *Pelagidis*, 2018 WL 2221838 at *7 (collecting cases). Judge Rosenthal held that "the mandate to strictly construe the removal statute and resolve 'any doubt as to the propriety of removal . . . in favor of remand' means that removal based on the general maritime-

19

law claims cannot stand." *Id.* at * 8. Thus, contrary to ABS's arguments, "Section 1333 does not give federal courts subject matter jurisdiction over maritime claims brought at law" and therefore, the amendments to section 1441 do not change the fact that general maritime claims are not removable absent another basis for jurisdiction. *Langlois*, 139 F. Supp. 3d at 815. So here, given the lack of evidence supporting ABS's federal officer removal arguments and leaving the Court to determine—like in *Sanders*—the removability of Plaintiffs' maritime claims, remand is mandatory. As a final point, it's important to note that ABS has not cited a single case—and Plaintiffs could not locate one—where ABS successfully removed a general maritime case like this based on federal officer jurisdiction. Absent federal jurisdiction under a federal officer theory, this Court should remand Plaintiffs' general maritime claims.

<span style="text-decoration: underline">C</span><span style="text-decoration: underline">ONCLUSION</span>

In sum, neither of ABS's theories on removal are convincing. First, ABS has not—and cannot—establish the elements of federal officer removal. ABS was not acting under the directions of a federal officer when it inspected and certified the B.255 barge using its own rules, guidelines, and methods. And second, absent federal officer removal, ABS has not established another ground for federal jurisdiction. Therefore, ABS's federal question arguments must be denied and this general maritime case should be remanded.

Accordingly, Plaintiffs respectfully request that the Court remand this general maritime case to state court.

Respectfully Submitted,

**ARNOLD & ITKIN LLP**

*/s/ Kurt Arnold*

_____

Kurt Arnold
State Bar No. 24036150
karnold@arnolditkin.com
Caj Boatright
State Bar No. 24036237
cboatright@arnolditkin.com
Roland Christensen
State Bar No. 24101222
rchristensen@arnolditkin.com
Joseph McGowin
State Bar No. 24117268
jmcgowin@arnolditkin.com
6009 Memorial Drive
Houston, Texas  77007
Telephone: (713) 222-3800
Facsimile:  (713) 222-3850

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument was forwarded to all counsel of record pursuant to the Federal Rules of Civil Procedure on this 7th day of February, 2020.

*/s/ Roland Christensen*
Roland Christensen

21