IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Daniel Jackson, Individually and as the Personal Representative of the Estate of Zachariah Jackson, and Lynda Jackson<br><br>*Plaintiffs*,<br><br>v.<br><br>American Bureau of Shipping; ABS Group of Companies, Inc.; ABS Quality Evaluations, Inc.; ABS Maritime Services, Inc.; and ABSG Consulting, Inc.<br><br>*Defendants*. | § § § § § § § § § § § § § § § § § | C.A. No. 4:20-cv-00109 |

**REPLY TO DEFENDANTS' RESPONSE IN
OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

### INTRODUCTION

In its response to Plaintiffs' motion to remand, ABS has not cited a single case, put forth a single piece of evidence, or raised any argument that would defeat Plaintiffs' motion. Instead, ABS admits—as Plaintiffs pointed out in their motion—that most of its activities fall outside its federal mandate by the United States Coast Guard ("USCG") and that it performs classification inspections according to its own rules and policies. Struggling to deal with this admission, ABS tries to expand the scope of its activities—in particular the actions that caused Plaintiffs' injuries and of which they complain—to merge ABS's actions as a private entity into the federal officer removal analysis. In reality, Plaintiffs brought suit strictly based on ABS's actions as a private entity performing ABS's unique classification services. Thus, ABS's attempts to expand the federal officer removal analysis to include its private acts that are the subject of this suit (for the

1

first time ever according to Plaintiffs' research) completely ignores established removal principles and incorrectly seeks to expand the connection element of federal officer removal.

The policy behind federal officer removal is to protect individuals who are truly acting at the direction and on behalf of a federal officer. *See e.g. Takacs v. Am. Eurocopter, L.L.C.*, 656 F. Supp. 2d 640, 643-44 (W.D. Tex. 2009). ABS tries to move the needle of federal officer removal past this well-accepted criterion to no avail. By ABS's logic, federal officer removal protects any individual or entity that performs any action even remotely related to federal direction, for everything they do, regardless of whether the actions that are the subject of the suit fall under the direction of a federal officer. Importantly, ABS has not cited a single case in support of this argument. The reason is clear: ABS's argument is directly contrary to the whole idea and purpose of federal officer removal. Indeed, ABS cannot provide contrary proof to Plaintiffs' evidence and cannot put forth any argument contrary to Plaintiffs' contentions on remand.

## ARGUMENT

### 1. *Latiolais v. Huntington Ingalls, Inc.* does not change the analysis here.

In its response, ABS cites a recent en banc Fifth Circuit case—*Latiolais v. Huntington Ingalls, Inc.*, 18-30652, 2020 WL 878930 (5th Cir. Feb. 24, 2020)—which ABS argues is critical to the Court's analysis on Plaintiffs' motion to remand. But *Latiolais* does nothing to change the analysis here, and in fact, *Latiolais* is easily distinguishable. Indeed, the Fifth Circuit's decision to do away with the "causal nexus" component of federal officer removal in favor of a "connection" test does not change the outcome here. Instead, *Latiolais* simply confirms that remand is appropriate where ABS cannot show that it was acting under the direction of a federal officer when it conducted classification services for the B.255 barge at Bouchard's request and failed to perform those services adequately. Thus, even in light of *Latiolais*, ABS cannot support its removal arguments no matter how hard it tries to conflate the inspections it performs with its

private classification services. This is particularly true because Plaintiffs' claims arise from ABS's negligent acts committed during its private, Bouchard-requested, classification services.

A short look at *Latiolais* is appropriate. There, an en banc Fifth Circuit panel sought to "strip away any confusion" that may have crept into federal officer jurisprudence in the Fifth Circuit courts from the 2011 amendment to the federal officer removal statute. *Id.* at *1. The case involved a machinist working aboard the Navy's USS *Tappahannock* while the vessel was being refurbished by Avondale. *Id.* During the 1960s and 1970s, Avondale contracted with the Navy to build and refurbish Navy vessels. Importantly, "the contracts obligated Avondale 'to comply with government plans and specifications, and the federal government had the right to and did exercise supervision over the process to ensure such compliance.'" *Id.* The plaintiff contracted mesothelioma after being exposed to asbestos due to Avondale's refurbishing work. *Id.*

On the plaintiff's motion to remand, the district court—following previous decisions—granted the motion because the defendants could not show control by the federal government over Avondale's safety practices specific to Avondale's use of asbestos. In short, remand was proper because the government's lack of control over those policies prevented a finding of a causal nexus between Avondale's federally-controlled activities and the plaintiff's injuries.

But the Fifth Circuit reversed after a lengthy statutory analysis where the Court determined that the "causal nexus" requirement was unsupported by the statute and that instead it required only a connection between the cause of action and acts performed under the color of federal office. *Id.* at *7. That connection existed in *Latiolais* where the plaintiff alleged that "Avondale failed to warn him of the dangers of asbestos and failed to take measures to prevent exposure." *Id.* The negligent acts were "connected with the installation of asbestos during the refurbishment of the USS *Tappahannock*" while "Avondale performed the refurbishment"

3

including the "installation of asbestos pursuant to directions of the U.S. Navy." *Id.*

Unlike the defendant in *Latiolais*, ABS cannot establish that same connection here. ABS would have this Court believe that any connection between its private classification work and the federally-mandated inspections it occasionally performs deserves federal officer protections. This, ABS argues, should be true even where as here, Plaintiffs' claims arise out of ABS's private classification work performed at Bouchard's request. This argument grossly overextends the holding in *Latiolais*, which still requires a connection or association with acts "pursuant to a federal officer's direction"—something ABS cannot establish here. *Id.*

### 2. ABS has not cited a single case where a classification service has successfully removed a case under federal officer jurisdiction.

Plaintiffs pointed out that in its removal papers ABS did not cite a single case where any court ratified removal of Jones Act and general maritime claims under the federal officer provision. ABS also failed to cite a single case where a private classification entity removed *any type of action* based on federal officer removal. ABS again failed to provide the Court with any such authority in its response. Courts for decades have protected an injured seaman's ability to choose his or her forum when bringing Jones Act and general maritime claims. The Court should do the same here, especially in light of ABS's failure to provide any authority to the contrary.

### 3. ABS acknowledges that the actions Plaintiffs complain about here were part of ABS's activities as a private entity.

ABS acknowledges that it performs activities under both federal mandate and as part of its own private business. But ABS has done nothing to link the actions Plaintiffs' complain of to its federal mandate from the USCG. In their motion, Plaintiffs put forth evidence that the ABS classification inspections applicable here are completely voluntary and do not replace mandatory USCG inspections. ABS references, but does not provide or cite—save a single reference to load line requirements—several types of inspections it claims it was performing aboard the B.255

under federal mandate. But, ABS cannot link any of those inspections to the activities from which this suit arises. Thus, as Plaintiffs allege, the actions giving rise to this suit were performed by ABS in its private capacity rather than under a federal mandate.

Again, ABS has done nothing to explain how the inspections at issue here fall under specific instruction from a federal officer. Instead, as Plaintiffs have shown, ABS clearly states that the classification services at issue are carried out in compliance with ABS's own rules and standards and for ABS's own use. Instead, ABS conflates through intentionally vague generalities its federal and private activities in an effort to try to make them one and the same to invoke federal officer removal. These efforts are meritless given the evidence presented in Plaintiffs' motion, which went uncontested by ABS in its response.

### 4. ABS does nothing to explain how the allegations in Plaintiffs' complaint are linked to its mandate from the USCG.

As outlined in Plaintiffs' complaint, Plaintiffs have brought suit against ABS for its failures to properly inspect the B.255 and to identify defects and safety hazards during its numerous classification inspections. The best ABS can do in its response is to point out that it is an agent of the USCG (for limited activities not implicated here), and admits that it also performs voluntary classification services—the very services that Plaintiffs allege give rise to this suit—under its own unique policies and standards. This is not enough to establish federal officer removal.

Specifically, nowhere in Plaintiffs' complaint do Plaintiffs contend that ABS violated its duties in performing load line certifications or other unique tests delegated by the USCG. Instead, Plaintiffs' allegations clearly are for ABS's failures with regard to ABS's own unique class certification process—a process that is separate and independent from the USCG. *See* (Doc. 6-1, at ¶¶ 20-22) (explaining claims against ABS involve ABS classification and Special

Periodical Surveys required to maintain classification against ABS).

### 5. ABS's does not have a sovereign immunity defense.

In passing, and for the first time in its efforts at removal, ABS makes a sovereign immunity argument and claims that this alone confers federal jurisdiction. But, ABS has not provided any evidence or cited any authority that would show that a sovereign immunity defense is applicable here. If sovereign immunity offered any legitimate basis for removal, ABS would have raised it before now.

### 6. ABS's attempt to distinguish Southern District precedent is unconvincing.

ABS incorrectly applies recent precedent on the removability of general maritime claims. ABS takes issue in particular with Judge Rosenthal's decision in *Pelagidis v. Future Care Inc.*, arguing in essence that her citation to two Fifth Circuit cases overrides the rest of her opinion. In the citations quoted by ABS, Judge Rosenthal pointed out that at the time of her opinion the Fifth Circuit had not addressed the relationship between the 2011 amendments to section 1441 and the removability issue in *Pelagidis*—and here. But what ABS does not address, is the discussion that follows, where Judge Rosenthal clearly outlined her reasoning for her holding that removal based on the general maritime claims in *Pelagidis*—similar to the claims here—was inappropriate.

### 7. Plaintiffs do not—as ABS alleges—cite conclusions from the NTSB report.

ABS takes issue with Plaintiffs' citations to the NTSB report. Plaintiffs did not cite conclusions but instead provided facts to give the Court background information and to concisely show the sequence of both ABS and USCG inspections of the B.255. The facts in the NTSB report make clear that both ABS and the USCG were performing inspections of the B.255. If ABS was taking the place of the USCG, as ABS alleges, both entities would not be performing inspections simultaneously. Thus, even the NTSB report—without the conclusions—provides uncontested evidence in support of remand.

## CONCLUSION

Plaintiffs respectfully request that the Court remand Plaintiffs' claims.

Respectfully Submitted,

**ARNOLD & ITKIN LLP**

*/s/ Kurt Arnold*
_____
Kurt Arnold
State Bar No. 24036150
karnold@arnolditkin.com
Caj Boatright
State Bar No. 24036237
cboatright@arnolditkin.com
Roland Christensen
State Bar No. 24101222
rchristensen@arnolditkin.com
Joseph McGowin
State Bar No. 24117268
jmcgowin@arnolditkin.com
6009 Memorial Drive
Houston, Texas  77007
Telephone: (713) 222-3800
Facsimile:  (713) 222-3850
For electronic service:
e-service@arnolditkin.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was forwarded to all counsel of record pursuant to the Federal Rules of Civil Procedure on this 4th day of March, 2020.

*/s/ Caj Boatright*
Caj Boatright